**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 05-2641

MARCEL NEHME YOUNES,

Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General of the United States,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, <u>Circuit Judge</u>,
Stahl, <u>Senior Circuit Judge</u>,
and Lynch, <u>Circuit Judge</u>.

---

<u>Peter Allen</u> on brief for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division,
U.S. Department of Justice, <u>Michael P. Lindemann</u>, Assistant
Director, Office of Immigration Litigation, and <u>Ethan B. Kanter</u>,
Senior Litigation Counsel, on brief for respondent.

---

August 21, 2006

---

**Per Curiam**.  Petitioner Marcel Nehme Younes, a native of Lebanon, came to the United States in May 1988 on a non-immigrant visa conditioned on his attending school.  That limitation notwithstanding, Younes never attended school, and in September 1988 the Immigration and Naturalization Service began removal proceedings against Younes for failure to comply with the terms of his student visa.  Younes conceded deportatability but applied for political asylum.  There was some preliminary activity on Younes's removal case in the period from late 1989 to March 1991, during which time Younes requested and received a number of hearing continuances.  In March 1991, Lebanese aliens as a group became eligible for Temporary Protected Status (TPS), and proceedings on Younes's case were halted pending the expiration of the TPS decree, which did not occur until 1999.  The hearings resumed briefly that year, only to be continued again for want of a translator.  A merits hearing on Younes's asylum petition was not convened until 2004.

At the 2004 asylum hearing, there was some initial confusion about Younes's need for a translator.  Younes indicated that he spoke English and at the start of the hearing alternated between English and Arabic, but at the urging of the Immigration Judge (IJ) to select a language and stick with it ultimately decided to speak in Arabic and avail himself of the benefit of the now-present translator.

At the hearing, Younes testified that in 1988 he was a member of Lebanon's Christian Kataeb party and actively worked to eject Syria from Lebanon. He alleged four incidents of mistreatment by members of the Syrian military which he said he was subjected to on account of his political affiliation and activities. On each occasion, Younes said, he was detained by Syrian military personnel and beaten. He alleged that on the first three occasions he was interrogated about his involvement with Kataeb, while on the fourth, no mention was made of his political activities but Younes attested that he believed the beating and harassment he suffered were directed against him by reason of those activities. Younes concluded his testimony by asserting his belief that he would be killed if he returned to Lebanon.

The IJ hearing the case found Younes not to be a credible witness. He noted discrepancies between Younes's initial statement of his reasons for requesting asylum, completed at a time when Younes had recently arrived in the United States, and the description given by him many years later at his asylum hearing of the incidents of harassment and abuse that he claimed to have experienced in Lebanon. First, Younes had described only three incidents when he first sought asylum in the United States, but at the hearing had testified about a fourth occasion, giving the IJ some reason to suspect recent post hoc fabrication and casting doubt on the veracity of Younes's other accounts. Second, Younes

-3-

had changed his account of when an alleged third incident had occurred, initially dating the incident in April 1987 but later attesting that it had taken place in October of that year. Finally, and most significantly, Younes had originally written that during the third incident he had been "pulled . . . out into the street . . . during an exchange of gunfire," while in his testimony Younes indicated that the third incident had consisted in his being taken into custody "from his home and mistreated for six hours before being released." The IJ thought these inconsistencies cast doubt upon his story, and that Younes's explanation for them -- that he had been under stress or otherwise could not remember the details of his encounters with Syrian forces -- was unconvincing. The IJ also counted against Younes's credibility as to his fear of persecution the fact that he had obtained a Lebanese passport through normal channels, had traveled to Syria to obtain a U.S. visa from the U.S. embassy there, and had waited months after obtaining the visa before departing for the United States, suggesting that his fear of remaining in the country was not as pressing as he indicated. For these and other reasons, the IJ determined that Younes had not presented a credible account of persecution.

Finally, the IJ determined, following the rendered opinion of the State Department, that even if Younes's account were true, his experiences were merely "manifestations of the civil war

which has gripped Lebanon for over a decade rather than persecution within the meaning of the INA." This State Department opinion, the IJ concluded, was consistent with our decisions in Nelson v. INS, 232 F.3d 258 (1st Cir. 2000), and Disu v. Ashcroft, 338 F.3d 13 (1st Cir. 2003), under which, even were his account true, Younes would not be entitled to asylum relief.

We need not reach any question presented regarding the proper interpretation of the INA, because the IJ's credibility determination settles the matter. It is an alien's burden to establish eligibility for asylum, and to do so the alien must present credible evidence that he has suffered persecution in the past or otherwise fears persecution in the future. Since Younes's asylum case rested on his testimony, the credibility of that testimony was vital to the case. Younes therefore can win this appeal only if he demonstrates that the IJ's credibility determination (which, where the Board of Immigration Appeals (BIA) summarily affirms, we review for all relevant purposes as the final determination of the agency, see Keo v. Ashcroft, 341 F.3d 57, 60 (1st Cir. 2003)) is not supported by the record.

Under the INA, we uphold the agency's credibility determination "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Khem v. Ashcroft, 342 F.3d 51, 53 (1st Cir. 2003). That is not the case here, as the insufficiently explained inconsistencies in

Younes's story, the fact that his exit from Lebanon proceeded at a slow pace and through legitimate channels with the apparent acquiescence of the government, among and along with other reasons cited by the IJ, gave the IJ sufficient initial grounds to doubt Younes's story. Younes's failure to provide corroborating evidence or an explanation for that failure, despite the fact that he has brothers living in the United States and in Canada who could reasonably have been expected to back up his story, further gave the IJ pause, and reasonably so. Moreover, the fact that Younes's mother, a third brother, and four sisters continue to live in Lebanon tends to undermine (though does not conclusively discredit) his testimony that he believed he would himself be killed upon his return.

More to the point, Younes has not explained how the evidence presented compels a contrary result, even if it might suggest one. Because the adverse credibility determination of the IJ must rest undisturbed unless a plaintiff can show that the IJ had no reasonable choice but to conclude other than he did, and Younes has not attempted such a showing here, our inquiry begins and ends with the credibility question.

Younes also raises a secondary claim on due process grounds, contending that his rights were violated when the IJ failed to grant him a continuance in order to bring in an expert witness, but there is nothing to this argument. Where Younes's

counsel asked to present an expert witness and indicated that the expert was not immediately available, the IJ asked counsel to describe the material that would be presented by the expert. Counsel indicated that the expert would testify that conditions in Lebanon had not improved and may have worsened during Younes's time in the United States, without giving any indication that the expert knew anything about Younes in particular.

The IJ's final decision rested on Younes's credibility, meaning that the IJ disposed of Younes's case without needing to reach the question of current conditions in Lebanon. The expert testimony was not relevant to these grounds for the decision, and any error therefore did not prejudice Younes and so did not render his hearing fundamentally unfair.[1] See Mekhoukh v. Ashcroft, 358 F.3d 118, 129 (1st Cir. 2004).

For the foregoing reasons, the petition for review is **denied**. The decision of the BIA is **affirmed**.

---

[1]Nor is there any reason to conclude, on the basis of Younes's submission, that there was any error at all on the IJ's part in his handling of the proposed expert testimony. Younes suggests that relevant objections were entered by counsel and that a request for a continuance was made and improperly denied, but not only is all of this irrelevant, as discussed in the text, it is far from clear that any of it is even so: Younes provides no convincing citation to the record in support of any of these propositions. So too with Younes's claims that his right to a competent translator was trampled on. By all appearances, notwithstanding Younes's unsupported protestations on this appeal, the translator provided was thoroughly competent.